[No. 17889-3-II.   Division Two.   February 2, 1996.]

EMMA SNEED, *Appellant*, v. LILLIAN BARNA, ET AL.,
*Respondents*.

844

*Katrin E. Frank* and *MacDonald, Hoague & Bayless*, for appellant.

*Curman M. Sebree*, for respondents.

BRIDGEWATER, J. — This case requires us to decide whether a reassignment from elementary school principal to Administrator for At-Risk Students constituted an "adverse action." We hold that the assignment, which maintained Emma Sneed at her current salary, was not an adverse change in her contract status pursuant to stat-

ute, and that the facts surrounding her new position do not support a constructive discharge claim as a matter of law. We affirm.

Sneed appeals a summary judgment dismissing her suit that challenged her transfer from principal to the Administrator for At-Risk Students in the Tacoma Public School District. Sneed voluntarily quit shortly after the transfer and then sued the District, alleging violations of statutory procedures and her due process rights along with a claim of constructive discharge.

The District employed Sneed as a principal for nine years total and as principal of Sheridan Elementary School, her last assignment as a principal, from 1987-1990. Her mid-year evaluation for the 1989-90 school year was "[u]nsatisfactory." Then, on May 11, 1990, a meeting took place among Sneed, Personnel Director Willie Stewart, and Superintendent Lillian Barna. The parties dispute certain facts surrounding this meeting.

At the meeting, Barna offered Sneed the newly-created position of Administrator for At-Risk Students. At the time she offered Sneed the position, Barna did not have a description of the position and did not know what credentials would be required for the job, although she did want someone who was knowledgeable with at-risk students and who had administrative skills. Sneed accepted the position.

Sneed acknowledged receipt of a letter drafted by Barna stating that Sneed's transfer was due to two factors: first, because the District needed someone in that position and Sneed was interested in that work; and second, because Sneed's work as principal had not been satisfactory in certain areas. Her annual evaluation for the 1989-90 school year, also received on May 11, was "[n]eeds improvement."

Sneed alleges that at the meeting she was told by Barna that if she did not accept the position, she would be discharged. Sneed also alleges that she was forced to sign

the letter and that she was not afforded any time to think about accepting the position. Conversely, the District states that Barna merely offered Sneed the position and Sneed accepted. The District maintains that if Sneed had objected to the transfer, Sneed would have been reassigned as a principal at another school.

During the summer of 1990, Sneed took office as the Administrator for At-Risk Students. Although Sneed testified that she started using her new office in the "latter part of June" 1990, she was unclear about how long she worked as administrator before resigning because she had a vacation period during that time. When Sneed resigned on August 31, payroll records showed that Sneed had worked as administrator for only eight days.

Sneed's salary and classification as a principal remained the same after the transfer. But Sneed maintains her new position was "[h]umiliating and [i]ntolerable" after being a principal. She contends that her new office, which had been used as a storage space for three to four years, was dusty, small, noisy and caused her headaches and nasal congestion, although a humidifier later furnished by the District helped alleviate some of these problems; and that the District expected her to help register students on opening day, which she considered to be a low-level administrative task, even though she admitted that sometimes administrators from the main office helped out with registration. She also alleges that she was forced to borrow or share a secretary and supplies; and that she received no guidance as to budget, assistance, strategy or support. Sneed maintains that she resigned her position on August 31, 1990, because she was being treated in a demeaning and humiliating manner.

Sneed sued the District based upon a number of causes of action, including that: (1) the District's actions constituted an adverse change in her contract status without proper notice and an opportunity for a hearing in violation of RCW 28A.405.300; (2) the District deprived her of her job without due process of law; and (3) the District

constructively discharged her in violation of her contract. The trial court granted the District's motion for summary judgment and dismissed Sneed's complaint.[1]

In reviewing a summary judgment, an appellate court engages in the same analysis as the trial court: a motion for summary judgment is properly granted if the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The appellate court considers the facts in the light most favorable to the nonmoving party. *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 62, 847 P.2d 440 (1993); CR 56(c).

I

Sneed argues that the trial court erred in granting summary judgment because she failed to receive adequate notice and an opportunity for a hearing based upon three statutes. First, she argues that her "transfer" to Administrator of At-Risk students constitutes an adverse change in contract status without notice and without the opportunity for a hearing, in violation of RCW 28A.405.300.

■ Second, Sneed argues that her transfer constituted a nonrenewal of her contract without both notice of probable cause and an opportunity for a hearing, in violation of RCW 28A.405.210. But Sneed never claimed a violation of RCW 28A.405.210 before the trial court, and an argument that was neither pleaded nor argued to the trial court cannot be raised for the first time on appeal. *Woodcreek Land Ltd. Partnerships v. City of Puyallup*, 69 Wn. App. 1, 11, 847 P.2d 501 (1993).

Third, Sneed argues that because she was a tenured principal, she could not be transferred under RCW 28A.405.230. Our holding with regard to this statute is

---

[1] In her complaint, Sneed also alleged that the District's act constituted a demotion of a tenured principal in violation of RCW 28A.405.230 and that the District negligently inflicted emotional distress upon her. She does not appeal the dismissal of these claims.

dispositive as to all claims except for the constructive discharge claim.

■ ■ RCW 28A.405.230[2] prohibits principals with three or more years' experience from being transferred to a "subordinate certificated position." A subordinate certificated position is defined by the statute as "any administrative or nonadministrative certificated position *for which the annual compensation is less than the position currently held by the administrator.*" RCW 28A.405.230 (emphasis added). Here, because Sneed's salary as Administrator for At-Risk Students was the *same* as her salary as principal, RCW 28A.405.230 does not apply. Also, we hold that this is dispositive as to whether Sneed's transfer was an adverse change in her contract status.

Under the statute, the District has the right to transfer tenured principals as long as their salaries are not reduced. This allows the employer to match the skills of the individual administrator with the District's needs, either or both of which may change from year to year. Here, the District merely effected a transfer which it had a right to do; thus, there was no adverse change in Sneed's contract status. This necessarily disposes of the claims regarding notice and whether she was accorded due process with regard to an adverse change in her contract status.

II

Sneed also argues that the trial court erroneously granted summary judgment to the District on her constructive discharge claim. In her complaint, Sneed alleged

---

[2]RCW 28A.405.230 provides in pertinent part:

Any certificated employee of a school district employed as . . . [a] principal . . ., hereinafter in this section referred to as "administrator", shall be subject to transfer, at the expiration of the term of his or her employment contract, to any subordinate certificated position within the school district. "Subordinate certificated position" as used in this section, shall mean any administrative or nonadministrative certificated position for which the annual compensation is less than the position currently held by the administrator.

that her transfer was in reality a demotion and constituted a constructive discharge in violation of her contract. The District responds that the trial court properly dismissed her constructive discharge claim.

■ We must determine if, considering all facts in the light most favorable to Sneed, the District is entitled to judgment on the constructive discharge claim as a matter of law. A resignation is presumed to be voluntary, and it is incumbent upon the employee to introduce evidence to rebut that presumption. *Micone v. Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 642, 722 P.2d 1369, *review denied*, 107 Wn.2d 1010 (1986).

A public employee's property interest in continued employment is created and defined by state law, and is protected by the due process clauses of the state and federal constitutions. *Olson v. University of Wash.*, 89 Wn.2d 558, 573, 573 P.2d 1308 (1978). A public employee has no vested property right in public employment and possesses no due process rights apart from the protections afforded by statute. *Olson*, 89 Wn.2d 558; *Micone*, 44 Wn. App. at 638.

■ Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable, thereby forcing the employee to resign. *Micone*, 44 Wn. App. at 643. The word "deliberately" requires a deliberate act of the employer creating the intolerable condition, without regard to the employer's mental state as to the resulting consequence. *Bulaich v. AT&T Info. Sys.*, 113 Wn.2d 254, 261, 778 P.2d 1031 (1989). The inquiry is whether " 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.' " *Stork v. International Bazaar Inc.*, 54 Wn. App. 274, 287, 774 P.2d 22 (1989) (quoting *Nolan v. Cleland*, 686 F.2d 806, 813 (9th Cir. 1982)).

■ Generally, whether working conditions have risen to an "intolerable" level is a factual question for the jury.

*Sanchez v. City of Santa Ana,* 915 F.2d 424, 431 (9th Cir. 1990), *cert. denied,* 502 U.S. 815 (1991). As the District points out, courts usually look for evidence of either "aggravating circumstances" or a "continuous pattern of discriminatory treatment" to support a constructive discharge claim. *Wunderly v. S.C. Johnson & Son, Inc.,* 828 F. Supp. 801, 806 (D. Or. 1993).

Here, taken in the light most favorable to Sneed, the facts show that during her roughly two-month tenure as Administrator for At-Risk Students: the District removed Sneed from principal to a position of less stature, albeit to a position with the same pay as principal; the position had no budget or assistance, and she was forced to borrow or share a secretary and supplies; the office was dusty, small and noisy; the District expected her to help register students on opening day, which she considered humiliating even though she admitted that administrators from the main office would sometimes help out; and that she received no guidance as to budget, assistance, strategy or support.

We hold as a matter of law that these allegations do not evidence the "aggravating circumstances" or "continuous pattern of discriminatory treatment" required to support a constructive discharge claim. Sneed received the same pay as she did when a principal; worked as Administrator for a relatively short period of time; and was asked to help register students on opening day, which by her own admission was not an unprecedented request. The other allegations, while evidencing some degree of frustration, do not rise to the level of being so difficult or unpleasant that a reasonable person in Sneed's shoes would have felt compelled to resign. Sneed's argument fails.

## III

■ Finally, the District argues that it is entitled to attorney's fees because Sneed's lawsuit was frivolous. RAP 18.9(a). But because there are debatable issues upon which reasonable minds might differ, *Streater v. White,* 26 Wn.

App. 430, 434-35, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980), we deny attorney's fees.

We affirm.

SEINFELD, C.J., and FLEISHER, J. Pro Tem., concur.

Review denied at 129 Wn.2d 1023 (1996).