19 P.3d 1041 (2000)
105 Wash.App. 1
Bettena WASHINGTON, Appellant,
v.
The BOEING COMPANY, Respondent.
No. 45385-8-I.
Court of Appeals of Washington, Division 1.
December 4, 2000.
Publication Ordered February 26, 2001.
*1044 Jay Stevens, Kent, Mary Ruth Mann, Seattle, for Appellant.
Russsell, Perisho & Sonja Lengnick, Seattle, for Respondent. *1042
*1043 COX, J.
Bettena Washington appeals the summary dismissal of her various claims against the Boeing Company based on RCW 49.60 and other theories. She failed to establish a continuing violation so as to avoid the applicable statute of limitations period for her discrimination, retaliation, and constructive discharge claims. Moreover, the events that occurred within the limitations period do not support her claims. Finally, Washington failed to establish a genuine issue of material fact with respect to the remainder of her claims. We affirm.
In 1990, Washington filed a complaint with Boeing's Equal Employment Opportunity Office (EEO). The claim was for alleged sex and race discrimination she experienced while working as a mechanic at Boeing's 767 factory from 1987 to 1990. In response to the complaint, Washington's supervisor assigned her to another shift in order to avoid a co-worker who had remarked that Washington could not do her job as well as a man could.
Washington continued to work at the 767 factory until 1992, when she left to join the military. In 1993, she returned to Boeing to work in its 747 factory. She was eventually transferred to Boeing's Flight Line program in March 1995 after a co-worker grabbed her buttocks as she was bending over.
Washington claims that she did not receive proper training at the flight line and that co-workers and a supervisor used inappropriate names to address her. Washington reported these incidents to EEO in early June 1996. The following month, Washington submitted a letter of resignation that was effective August 1, 1996. On that date, EEO commenced investigation into Washington's complaint.
*1045 In April 1998, Washington sued Boeing for sexual harassment, racial discrimination, constructive discharge, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent hiring, supervision, and retention. Boeing moved for summary judgment. In response to Boeing's motion for summary judgment, Washington also alleged a cause of action for wrongful retaliation. The trial court granted Boeing's motion, dismissing all of Washington's claims.
Washington appeals.

Continuing Violation
Washington argues that the trial court erred in summarily dismissing her RCW 49.60 claims based on acts occurring outside the applicable three-year statute of limitations. We hold that the continuing violation doctrine does not apply here.
We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.[1] All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party.[2] We review questions of law de novo.[3]
The moving party bears the initial burden of showing the absence of a genuine issue of material fact.[4] Once that burden is met, the burden shifts to the party with the burden of proof at trial to make a showing sufficient to establish the existence of an element essential to that party's case.[5] If the claimant fails to meet that burden, the trial court should grant the motion because there can be no genuine issue of material fact given that a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.[6]
Washington's discrimination, retaliation, and constructive discharge claims are brought under RCW 49.60.[7] The three-year statute of limitations applies to actions under this act.[8] Because our discrimination laws substantially parallel Title VII, we may look to federal law for guidance.[9]
Here, Washington commenced this action on April 1, 1998. Her discrimination, retaliation, and constructive discharge claims are partly based on acts that occurred prior to April 1, 1995, the date marking the three-year bar of the statute of limitations. Washington argues that the acts are not time-barred because she is entitled to the equitable doctrine of continuing violation. But she fails to demonstrate that a genuine issue of material fact exists to allow her to benefit from this doctrine.
The continuing violation doctrine creates an equitable exception to RCW 49.60's statute of limitations when discriminatory conduct is ongoing.[10] The doctrine allows a plaintiff to allege otherwise time-barred discriminatory acts and recover damages based *1046 on those acts.[11] There are two kinds of continuing violationsthe serial and the systemic.[12] A serial violation occurs where a "chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims."[13] But a serial violation claim fails if the employee knew or should have known that the earlier acts, which are untimely at the time of asserting the claim, were discriminatory at the time that they were taking place.[14] When evaluating a serial violation claim, we consider three factors. First, we ask whether the alleged acts involve the same type of discrimination tending to connect them in a continuing violation. Second, we decide whether the alleged acts are recurring. Third, and most importantly, we ask whether the untimely act has the degree of permanence that should have triggered the employee's awareness of [discrimination] and duty to assert his or her rights.[15]
Washington argues that the facts here give rise to both serial and systemic violation claims. In support of these arguments, she only alleges that Boeing knowingly permitted a hostile work environment to exist for its female employees in its flight line and factories. She neither states specific facts nor does she discuss the relevant factors in determining the existence of either a serial or systemic violation. This is insufficient to avoid summary judgment.
Even if we were to assume that a hostile work environment exists, Washington cannot rely on that alone to establish a continuing violation. That is because the existence of a hostile work environment does not constitute a continuing violation per se.[16]
In short, Washington fails to establish a genuine issue of fact on the question of continuing violation.

Hostile Work Environment
Washington next argues that the trial court erred by summarily dismissing her hostile work environment sexual harassment claim. She fails to demonstrate a genuine issue of fact for this claim.
Sexual harassment claims are characterized either as "quid pro quo" or "hostile work environment" claims.[17] To establish a hostile work environment claim, the employee must demonstrate that there was (1) offensive, unwelcome contact that (2) occurred because of sex or gender, (3) affected the terms or conditions of employment, and (4) can be imputed to the employer.[18]
Because the trial court properly declined to consider matters outside the limitations period, the inquiry is whether Washington can show a genuine issue of material fact as to the hostile work environment claim based on the acts that occurred within the limitations period. Thus, we focus on the events after April 1, 1995.
Here, Washington fails to satisfy the third element of her claimwhether the sexually harassing conduct affected the terms and conditions of her employment. To determine whether the harassment is such that it affects the conditions of employment, we consider: the frequency and severity of the discriminatory conduct; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's *1047 work performance.[19] Casual, isolated or trivial manifestations of a discriminatory environment do not affect the terms or conditions of employment to a sufficiently significant degree to violate the law.[20]
The harassing conduct here is not pervasive enough to create an abusive working environment and alter the conditions of employment. While using terms like "dear" and "sweet pea" to address Washington were offensive to her, they were isolated occurrences that did not unreasonably interfere with her work performance. Likewise, the statement by male employees about a possible EEO complaint by Washington regarding her objection to a Japan Airlines calendar she found offensive was also an isolated incident that did not significantly impact Washington's work. Finally, while co-worker Dan Shields' refusal to assist Washington appeared to have been an ongoing occurrence, it did not unreasonably affect her work performance. In fact, Washington was upgraded from a grade 4 to grade 7 three months after she was transferred to the flight line. Accordingly, Washington failed to establish that the offensive conduct affected the terms and conditions of her employment.
Washington has similarly failed to satisfy the fourth elementwhether the sexual harassment is imputed to Boeing. In Glasgow, our Supreme Court held that where an owner, manager, partner, or corporate officer personally participates in the harassment, the fourth element is met by proof of management status.[21] Where the person harassing the worker is not in management, the employer is not held responsible for the discriminatory work environment created by a plaintiff's supervisor or co-worker. This is subject to the exception that if the employer (1) authorized, knew, or should have known of the harassment and (2) failed to take reasonably prompt and adequate corrective action there can be liability.[22]
Washington contends that under Glasgow, the flight line managers' participation in the negative gender-related comments is automatically imputed to Boeing because of their status as managers. Alternatively, she argues that the managers in her flight line crew knew of the harassment and failed to take prompt corrective action. Neither argument is persuasive.
First, assuming the flight line managers participated in the harassment, liability cannot be automatically imputed to Boeing because the numerous managers who supervised Washington do not occupy sufficiently high level positions within Boeing to be considered its alter ego.[23] Second, there is no support in the record before us for Washington's assertion that flight line crew managers participated in the harassing conduct except for the incident where manager Cory Moburg called her "dear." And once Washington told Moburg that she did not want to be addressed as "dear," Moburg apologized immediately and never called her "dear" again. Moreover, Boeing counseled Moburg and other employees regarding use of inappropriate terms to address co-workers. Similarly, once Washington informed her manager of the other offensive conductthe calendar display and co-worker Dan Shields' refusal to assist herthe calendar was taken *1048 down and her manager talked to Shields about assisting her. And Boeing also provided additional training to all flight line workers in equal employment opportunity issues and Boeing's anti-harassment policy. Thus, Washington's hostile work environment claim must fail.

Racially Hostile Environment
Washington also argues that the trial court erred in summarily dismissing her racially hostile work environment claim. We reject this argument as well.
To establish a prima facie case for a hostile work environment claim based on race, the plaintiff-employee must show (1) the harassment was unwelcome, (2) the harassment was because of race, (3) the harassment affected the terms or conditions of employment, and (4) the harassment is imputed to the employer.[24]
The third element, whether the racially harassing conduct affected the terms and conditions of Washington's employment, is not satisfied here. Referring to Washington's hair as "brillo head," while highly offensive, was an isolated incident and not sufficiently pervasive to alter the conditions of her employment.
Washington also fails to establish the fourth element of her claimthat the racial harassment is imputed to Boeing-because Boeing responded with adequate corrective action. The record demonstrates that after Washington complained to Boeing's EEO about the "brillo head" incident, Boeing counseled the employee who used that term as well as others on proper ways to address people. Thus, Washington has failed to show a genuine issue of material fact with respect to her racially hostile work environment claim.

Disparate Treatment
Washington argues that the trial court erred in summarily dismissing her racial discrimination claim based on disparate treatment. Her argument fails.
To establish a prima facie case of racial discrimination based on disparate treatment, an employee must show that "(1) [she] belongs to a protected class, (2)[she] was treated less favorably in the terms or conditions of [her] employment (3) than a similarly situated, nonprotected employee, and (4)[she] and the nonprotected `comparator' were doing substantially the same work."[25]
Here, Washington failed to show how she was treated less favorably than a similarly situated nonprotected employee. Washington alleges that she was treated less favorably because she did not receive adequate training in the flight line. But she offers no evidence that her training was inadequate or that more training was given to a similarly situated, non-protected employee. And Washington's allegation that she was denied the opportunity to learn skills for a more secure lifeline job at the 747 factory cannot be considered because it occurred outside the three-year limitations period. In sum, Washington has failed to state a prima facie case of racial discrimination based on disparate treatment.

Retaliation
Washington next claims that the trial court erred by summarily dismissing her retaliation claim under RCW 49.60.210. We hold that the summary dismissal was proper.
RCW 49.60.210(1) provides:
It is an unfair practice for any employer... to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.
To establish a prima facie case of retaliatory conduct, Washington must show *1049 that (1) she engaged in statutorily protected activity, (2) Boeing took some adverse employment action against her, and (3) retaliation was a substantial factor behind the adverse employment action.[26]
Assuming, without deciding, that Washington's complaint to Boeing's EEO regarding race and sex discrimination constituted statutorily protected activity, Washington fails to show a genuine issue of material fact that Boeing took an adverse employment action against her.
Washington asserts that Boeing took two adverse employment actions against her after she complained about race and sex discrimination: 1) it transferred her to the flight line after she reported to EEO about the incident where an employee grabbed her buttocks and 2) other employees were fearful that she would make an EEO claim against them. But Washington's transfer to the flight line cannot be the basis of her retaliatory claim because it occurred outside the limitations period. And Washington fails to demonstrate how her co-workers' perception of her as an EEO threat adversely affected her employment.[27] Even assuming there was adverse employment action, Washington has not shown any relationship between her complaints to EEO and flight line co-workers targeting her as an EEO threat. The trial court properly dismissed the retaliation claim.

Constructive Discharge
Washington also argues that the trial court erred by dismissing her constructive discharge claim against Boeing. She is mistaken.
To establish constructive discharge, the employee must show: (1) a deliberate act by the employer that made his working conditions so intolerable that a reasonable person would have felt compelled to resign;[28] and (2) that he or she resigned because of the conditions and not for some other reason.[29] Whether or not conditions are intolerable is a question of fact.[30] The inquiry is whether "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."[31] The "intolerable" element can be shown by aggravated circumstances or a continuous pattern of discriminatory treatment.[32] A resignation is presumed to be voluntary, and the employee must introduce evidence to rebut that presumption.[33]
Because Washington claims she was constructively discharged due to her sex and race in violation of RCW 49.60, the three-year statute of limitation applies to bar conduct that occurred prior to her transfer to the flight line.
To support her constructive discharge claim, Washington asserts that the working conditions took such a toll on her that she became tearful, frustrated, and upset. But because the harassment by co-workers cannot be imputed to Boeing, it cannot be said that Boeing deliberately created *1050 the alleged intolerable working conditions. Even assuming Boeing deliberately created the conditions, we conclude that the conditions do not constitute the "aggravating circumstances" or "continuous pattern of discriminatory treatment" required to support her claim.[34] The inappropriate name-calling was not an ongoing occurrence and the calendar that Washington found offensive was taken down. While the alleged negative remarks about women and a co-worker's refusal to assist her with certain tasks was frustrating, they do not rise to the level of being so difficult or unpleasant that a reasonable person in Washington's position would have felt compelled to resign. Accordingly, Washington's constructive discharge claim fails.

Intentional Infliction of Emotional Distress
Washington claims that the trial court erred in summarily dismissing her intentional infliction of emotional distress against Boeing. We disagree.
To establish an intentional infliction of emotional distress claim, a plaintiff must show (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) severe emotional distress on the part of the plaintiff.[35] The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and regarded as atrocious, and utterly intolerable in a civilized community."[36]
Washington fails to establish the existence of a genuine issue of material fact as to her intentional infliction of emotional distress claim. She appears to base her claim on the alleged race and sex discrimination she suffered at Boeing, but provides no argument as to how the conduct complained of is deemed extreme or outrageous or that she suffered extreme emotional distress. The trial court properly dismissed her intentional infliction of emotional distress claim.

Negligence
Washington also claims that the trial court erred by summarily dismissing her negligence claims, including negligent infliction of emotional distress (NIED) and negligent supervision, training, and retention of employees. These claims fail.
A plaintiff alleging negligence must establish duty, breach, proximate causation, and damage or injury.[37] A NIED claim also requires the plaintiff to establish that the emotional distress is manifested by objective symptoms.[38] Negligence claims are subject to the three-year statute of limitations.[39]
Here, Washington provides no relevant argument or citation to authority with respect to her NIED claim. We decline to consider it.[40]
As to the negligent retention claim, Washington cannot establish that Boeing breached its duty. Ignoring the limitations period, Washington alleges that Boeing knew its managers were unable to remedy a hostile work environment as evidenced by the obscene cartoons posted in the workplace. But the obscene cartoons at issue were posted *1051 during 1988 well outside the three-year limitations period. Even considering only those acts that occurred within the limitations period, the record shows no breach of duty by Boeing. As discussed above, Washington's supervisor at the flight line properly responded to the calendar incident and manager Moburg never addressed Washington as "dear" again. The trial court's summary dismissal of Washington's negligence claims was proper.

Motion for Reconsideration
Here, Washington submitted approximately 1,100 pages of documents in support of her motion for reconsideration. On October 22, 1999, the trial court denied Washington's motion for reconsideration. More than 30 days after the denial, Washington filed an untimely amended notice of appeal to add the order denying her motion for reconsideration to her earlier appeal. We decline to consider this untimely appeal.[41]
Boeing withdrew its motion to strike the 1,100 pages. Thus, we need not consider that motion.
We affirm the orders granting summary judgment.
NOTES
[1] CR 56(c).
[2] Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994).
[3] Mains Farm Homeowners Ass'n v. Worthington, 121 Wash.2d 810, 813, 854 P.2d 1072 (1993).
[4] Young v. Key Pharmaceuticals, Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989).
[5] Young, 112 Wash.2d at 225, 770 P.2d 182.
[6] Young, 112 Wash.2d at 225, 770 P.2d 182 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[7] RCW 49.60.180 provides, in relevant part:

It is an unfair practice for any employer:
...
(2) To discharge or bar any person from employment because of age, sex, marital status, race, creed, color...
(3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability...
[8] See RCW 4.16.080(2); Goodman v. Boeing Co., 75 Wash.App. 60, 77, 877 P.2d 703 (1994), aff'd, 127 Wash.2d 401, 899 P.2d 1265 (1995).
[9] Xieng v. Peoples Nat'l Bank, 120 Wash.2d 512, 518, 844 P.2d 389 (1993); Lewis v. Lockheed Shipbuilding and Const. Co., 36 Wash.App. 607, 613, 676 P.2d 545 (1984).
[10] Goodman, 75 Wash.App. at 77, 877 P.2d 703; see also, Provencher v. CVS Pharmacy, 145 F.3d 5, 14 (1st Cir. 1998).
[11] Goodman, 75 Wash.App. at 77-78, 877 P.2d 703; Provencher, 145 F.3d at 14.
[12] Milligan v. Thompson, 90 Wash.App. 586, 595, 953 P.2d 112 (1998); Provencher, 145 F.3d at 14.
[13] Provencher, 145 F.3d at 14.
[14] Provencher, 145 F.3d at 14.
[15] Milligan, 90 Wash.App. at 595, 953 P.2d 112.
[16] See West v. Philadelphia Elec. Co., 45 F.3d 744, 755 (3rd Cir. 1995) (refusing to adopt a per se rule that a properly alleged hostile work environment claim also constitutes a continuing violation claim).
[17] DeWater v. State, 130 Wash.2d 128, 134, 921 P.2d 1059 (1996).
[18] DeWater, 130 Wash.2d at 135, 921 P.2d 1059 (citing Glasgow v. Georgia-Pacific Corp., 103 Wash.2d 401, 406-07, 693 P.2d 708 (1985)).
[19] Sangster v. Albertson's, Inc., 99 Wash.App. 156, 163, 991 P.2d 674 (2000) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).
[20] Glasgow, 103 Wash.2d at 406, 693 P.2d 708; Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)

("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the `terms and conditions of employment'"); MacDonald v. Korum Ford, 80 Wash.App. 877, 886, 912 P.2d 1052 (1996).
[21] Glasgow, 103 Wash.2d at 407, 693 P.2d 708.
[22] DeWater, 130 Wash.2d at 135, 921 P.2d 1059 (citing Glasgow, 103 Wash.2d at 407, 693 P.2d 708).
[23] Francom v. Costco Wholesale Corp., 98 Wash.App. 845, 854-56, 991 P.2d 1182, review denied, 141 Wash.2d 1017, 10 P.3d 1071 (2000) (holding that mid-level manager at one of Costco's 200 warehouses was not acting as Costco's alter ego and thus liability for mid-level manager's actions cannot be imputed directly to Costco); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 758, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) (stating that an agent's high rank in the company makes him or her the employer's alter ego for purposes of imputing liability to employer in sexual harassment cases).
[24] Fisher v. Tacoma Sch. Dist. No. 10, 53 Wash.App. 591, 595-96, 769 P.2d 318, review denied, 112 Wash.2d 1027 (1989) (holding that the Glasgow test for a hostile work environment based on sex applies to a hostile work environment based on race as well).
[25] Johnson v. Department of Social & Health Servs., 80 Wash.App. 212, 227, 907 P.2d 1223 (1996).
[26] Delahunty v. Cahoon, 66 Wash.App. 829, 840-41, 832 P.2d 1378 (1992) (citing Allison v. Housing Auth., 118 Wash.2d 79, 95, 821 P.2d 34 (1991)).
[27] Cf. Munday v. Waste Management of North America, Inc., 126 F.3d 239, 243 (4th Cir.1997), cert. denied, 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998) (in reversing plaintiff's Title VII unlawful retaliation claim, the court held that manager yelling at employee-plaintiff, telling other employees to ignore her and to spy on her, and refusing to communicate with her concerning employment-related complaints did not, as a matter of law, constitute an adverse employment action).
[28] Sneed v. Barna, 80 Wash.App. 843, 849, 912 P.2d 1035, review denied, 129 Wash.2d 1023, 919 P.2d 600 (1996).
[29] Glasgow, 103 Wash.2d at 408, 693 P.2d 708 (citing Henson v. City of Dundee, 682 F.2d 897, 907 (11th Cir.1982)).
[30] Bulaich v. AT & T Information Sys., 113 Wash.2d 254, 261-62, 778 P.2d 1031 (1989).
[31] Sneed, 80 Wash.App. at 849, 912 P.2d 1035.
[32] Sneed, 80 Wash.App. at 850, 912 P.2d 1035 (citing Wunderly v. S.C. Johnson & Son, Inc., 828 F.Supp. 801, 806 (D.Or.1993)).
[33] Sneed, 80 Wash.App. at 849, 912 P.2d 1035 (citing Micone v. Steilacoom Civil Serv. Comm'n, 44 Wash.App. 636, 642, 722 P.2d 1369, review denied, 107 Wash.2d 1010 (1986)).
[34] Nielson v. AgriNorthwest, 95 Wash.App. 571, 578, 977 P.2d 613, review denied, 138 Wash.2d 1023, 989 P.2d 1137 (1999) (pattern of adverse treatment by employer which included holding a meeting to discuss employee's extramarital affair without employee's presence, terminating employee's spouse's health insurance because they were living apart, demoting employee shortly after he announced his engagement to another woman, and employee's supervisor stating that it was difficult to work with employee since he was ostracized by the whole company created intolerable condition to support employee's constructive discharge claim).
[35] Reid v. Pierce County, 136 Wash.2d 195, 202, 961 P.2d 333 (1998).
[36] Dicomes v. State, 113 Wash.2d 612, 630, 782 P.2d 1002 (1989) (quoting Grimsby v. Samson, 85 Wash.2d 52, 59, 530 P.2d 291 (1975) (italics omitted)).
[37] Hunsley v. Giard, 87 Wash.2d 424, 434, 553 P.2d 1096 (1976).
[38] Hunsley, 87 Wash.2d at 436, 553 P.2d 1096.
[39] RCW 4.16.080.
[40] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992) (appellate courts will not consider an assignment of error that is not supported by citations to the record); Bohn v. Cody, 119 Wash.2d, 357, 368, 832 P.2d 71 (1992) (an argument will not be considered if it is inadequately briefed).
[41] RAP 5.2(e) states in relevant part that "[a] notice of appeal of orders deciding certain timely motions designated in this section must be filed in the trial court within (1) 30 days after the entry of the order...".