# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEBI O'BRIEN, a married woman, ) | |
| ) | DIVISION ONE |
| Appellant, ) | |
| ) | No. 74367-8-I |
| v. ) | |
| ) | |
| HUGH KOSKINEN, a single man, ) | UNPUBLISHED OPINION |
| MATT PURVIS and JANE DOE ) | |
| PURVIS, and the marital community ) | |
| thereof, DAN LAWSON and JANE DOE ) | |
| LAWSON, and the marital community ) | |
| thereof, PAULETTE KETZA and JOHN ) | |
| DOE KETZA, and the marital ) | |
| community thereof, ROD HOWERY ) | |
| and JANE DOE HOWERY, and the ) | |
| marital community thereof, and VIVIAN ) | |
| SMITH and JOHN DOE SMITH, and the ) | |
| marital community thereof, ) | |
| ) | |
| Defendants, ) | |
| ) | |
| LEONARD CARDER and JANE DOE ) | |
| CARDER, and the marital community ) | |
| thereof, and ABM INDUSTRIES ) | |
| ("ABMI") and ABM PARKING ) | |
| SERVICES (d/b/a "Ampco" and ABM ) | |
| Onsite Services West), ) | |
| ) | |
| Respondents. ) | FILED: April 3, 2017 |
| ) | |

DWYER, J. — Debi O'Brien appeals from orders entered in the King County

Superior Court sanctioning, pursuant to Civil Rule (CR) 11, her and her attorneys

and dismissing, pursuant to CR 56(c), her claims against Leonard Carder, ABM

Parking Services, Inc., and ABM Industries Incorporated (ABMI). O'Brien contends that the superior court erred by imposing sanctions on the basis that she had not brought her claims against four individuals in a good faith effort to extend the law but, rather, for the improper purpose of forum shopping. O'Brien also contends that the superior court erred by denying her motion for a continuance of the summary judgment hearing and by dismissing her claims.

There was no error. We affirm.

I

A

O'Brien was hired by ABM Parking in 2007. ABM Parking is a corporation providing parking management services nationwide to owners of office complexes and surface lots. O'Brien was tasked with human resources coordination and operations management for the Seattle/Bellevue branch. In 2009, pursuant to her responsibilities as a human resources coordinator, O'Brien was asked by Hugh Koskinen, senior branch manager for the Seattle/Bellevue branch, to investigate a complaint made by Melody Dillon regarding sexually inappropriate conduct by two ABM Parking valets and, later, to discipline the valets for their conduct. O'Brien complied.

In 2010, as part of an ABM Parking customer service initiative and pursuant to her responsibilities as operations manager, O'Brien was asked to regularly visit parking locations managed by the Seattle/Bellevue branch of ABM Parking, conduct a "walk-through" inspection of those locations, and document improvements needed to be made thereto. This request was made by Koskinen

and Leonard Carder, then-regional vice president of ABM Parking. In addition to O'Brien, other ABM Parking managers were also asked to conduct these inspections. At the time, O'Brien stated that she believed that the parking locations managed by ABM Parking were unsafe. Over several months, O'Brien failed to complete the assigned number of inspections and Dan Lawson, her direct supervisor, wrote two disciplinary memoranda regarding her conduct.[1]

Beginning in 2012, pursuant to her responsibilities as operations manager, O'Brien was asked by Carder and Matt Purvis, assistant branch manager for ABM Parking's Seattle/Bellevue branch, to help with concerns regarding one of their client's parking locations, the Pacific Place Garage (PPG). They requested that O'Brien assist in investigating PPG's unusually high balance for its accounts receivable as well as reports from clients that they were not being billed for their customers' parking validations. O'Brien found several issues with the operation of PPG, including a validation stamp in the billing system without a name assigned to it and numerous individuals with outstanding balances for their monthly parking permits. Purvis instructed O'Brien to attempt to collect the unpaid balances but her efforts to coordinate such action with the manager of the PPG were unsuccessful.

---

[1] During the course of her employment, O'Brien was also disciplined for other conduct: for becoming angry with Koskinen when he asked her about a potential conflict of interest regarding a coworker with whom she had a personal relationship, for leaving the office frequently at 2 p.m. without explanation, for spending too much time speaking with her coworkers during the work week, for failing in her responsibility to assign valets to work an event—resulting in a "tremendously unhappy" client—and for making disparaging comments about Koskinen to co-workers.

In August 2012, O'Brien was assigned to work at the Spokane Fair. As part of its yearly contract with the Fair, ABM Parking assigned a group of salaried employees to assist with parking. O'Brien had last been assigned to work at the fair in 2009.[2] After learning that she was assigned to work the fair in 2012, O'Brien sent an e-mail to Paulette Kezta, manager of ABM Parking's operations at the Spokane Fair. In her e-mail, O'Brien expressed her apprehension about standing on her feet for the long shifts, explaining that she was "not young anymore" and that "[t]he older I get the more issues I get with standing long hours." Ketza responded to O'Brien, saying that ABM Parking was trying to avoid having its employees work the 15-hour shifts that had been worked in the past and was hoping to avoid those long hours by increasing its staffing for the fair. O'Brien thanked Ketza, replying that "all of my needs have been met!" At the fair, O'Brien worked 8 hours on one day and 12 hours on two other days. While there, O'Brien did not communicate additional concerns about standing and, afterward, explained only that she worked pretty long hours and was tired when she got back.

B

Starting in 2012, ABM Parking began to see revenues from its Seattle/Bellevue branch decline. It lost several bids to renew parking contracts in the Seattle and Bellevue area. The City of Seattle notified ABM Parking that it was not renewing its contract for the PPG—a contract worth $20,000 per month

---

[2] When O'Brien was assigned to work at the Spokane Fair in 2009, she requested to be excused from doing so. ABM Parking complied.

-4-

in revenue. In addition, due to advances in automation at the branch's clients' parking locations, it became less necessary for ABM Parking to have employees "out in the field."

Consequently, Rod Howery, the new regional vice president for ABM Parking,[3] began to look for ways to reduce the Seattle/Bellevue branch's administrative expenses. He discussed the potential elimination of positions with Madeline Kwan, human resources director for ABM Parking. They identified two positions: O'Brien's human resources and operations management position and the position of Ken Eichner, an auditor. Both worked at the Seattle/Bellevue branch. They determined that O'Brien's human resources duties could be performed by human resources employees at the San Francisco branch and that her operations management duties could be assigned to hourly employees at specific parking locations. O'Brien's parking location inspection duties were not re-assigned to another manager.[4]

Howery and Kwan planned to proceed with the layoffs in October 2012. However, they did not do so until the following year. They desired to notify O'Brien and Eichner in person but were unable to coordinate a time prior to December when both would be in the Seattle/Bellevue branch office. Then, because they wished to avoid giving a termination notice during the holiday season, they waited until early February 2013 to do so.

---

[3] In 2012, Carder, the previous regional vice president, was promoted to the position of executive vice president, with nationwide duties.

[4] Eichner's audit duties were to be taken on by the San Francisco branch's audit manager.

In January 2013, Kwan discussed the termination decision for O'Brien's and Eichner's positions with Vivian Smith, vice president of human resources for ABMI.[5] Smith's services were part of a human resources support agreement between ABM Parking and ABMI in which ABM Parking could submit to ABMI facts and information pertaining to a termination decision and have ABMI's human resources personnel review the decision for red flags. Smith and Kwan discussed the termination decision during a telephone conversation and Smith approved the decision.

On February 6, 2013, Howery and Kwan met with Eichner and O'Brien in Seattle and informed them that their positions were being eliminated. O'Brien recalled that Kwan told her "[t]hat we had lost some locations, and so they were reorganizing and had to eliminate my position." As planned, ABM Parking did not hire a new employee to replace O'Brien and her duties were either eliminated or taken on by other employees.

C

In October 2013, O'Brien sued ABM Parking and ABMI (ABM Defendants) in the King County Superior Court alleging age discrimination, retaliation, and associational discrimination pursuant to Washington's Law Against Discrimination (WLAD), chapter 49.60 RCW, as well as wrongful termination, breach of contract, and intentional infliction of emotional distress. One month later, the ABM Defendants removed the case to federal court. United States District Court Judge John C. Coughenour was assigned to the case. As their

---

[5] ABM Parking is an indirect wholly owned subsidiary of ABMI.

reason for removal, the ABM Defendants cited complete diversity of citizenship between the parties[6] and an alleged amount in controversy exceeding the federal jurisdictional minimum.

O'Brien then amended her complaint to join a Washington resident, Carder, as a defendant. O'Brien then moved to remand the case back to the King County Superior Court, asserting that Carder's residential status destroyed the federal district court's diversity jurisdiction. In response, the ABM Defendants filed a motion to dismiss the claim against Carder, arguing that he was not an indispensable party to the litigation. The district court granted the ABM Defendants' motion and Carder was dismissed from the case.

For the next year and a half, between November 2013 and March 2015, the federal lawsuit continued with the parties conducting discovery.[7] During that time, O'Brien requested and received two trial continuances.

Then, in March 2015, with four depositions scheduled and less than a month remaining until discovery was set to close, O'Brien moved to voluntarily dismiss her federal action against the ABM Defendants. O'Brien explained that she had discovered grounds to bring an action in state court against several of the ABM Defendants' individual managers and supervisors. Meanwhile, ABM

---

[6] O'Brien is a Washington resident, ABMI is a New York-based corporation, organized under Delaware law, and ABM Parking is an Ohio-based company, organized under California law.

[7] O'Brien propounded 17 interrogatories, submitted 52 requests for production, and conducted 7 depositions. Also during this period, O'Brien twice requested that sanctions be imposed against the ABM Defendants due to alleged "discovery abuse" in their responses to her discovery requests. The district court denied O'Brien's sanction requests. Also during this time, the ABM Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure (FRCP) 12(c). The district court resultantly dismissed with prejudice O'Brien's claims of retaliation, associational discrimination, and wrongful termination in violation of public policy.

Parking and ABMI each moved for summary judgment as to O'Brien's remaining claims. The district court granted O'Brien's motion and dismissed her action without prejudice.[8] It thus did not entertain the summary judgment motions.

D

In the same month that O'Brien moved to dismiss her federal action against the ABM Defendants, O'Brien filed a new lawsuit in the King County Superior Court against five individuals associated with ABM Parking: Carder, Koskinen, Purvis, Ketza, and Lawson, along with each of their marital communities. Shortly thereafter, the five individual defendants notified O'Brien that they intended to seek CR 11 sanctions unless O'Brien withdrew her claims against Lawson and Koskinen and her claims for breach of contract and promissory estoppel. They alleged that O'Brien's claims against Lawson and Koskinen were barred by the applicable statute of limitations[9] and that her breach of contract and promissory estoppel claims against each of the individuals were baseless because they had no involvement in establishing ABM Parking's policies. O'Brien responded to the CR 11 notice, denied the individual defendants' arguments, and, one week later, amended her new complaint to add two more individuals, Howery and Smith, and their marital communities, as defendants.[10]

One month later, the now seven individual defendants moved to dismiss O'Brien's action against them pursuant to CR 12(b)(6), with a hearing set for July

---

[8] In May 2015, O'Brien filed an appeal of the district court's FRCP 12(c) order and its discovery sanction order. She dismissed her appeal shortly thereafter.

[9] Both Lawson and Koskinen had left their employment with ABM Parking in 2010.

[10] O'Brien also amended her complaint to add a claim for tortious interference.

2, 2015. In response, O'Brien moved to amend her complaint a second time, seeking to add ABM Parking and ABMI as defendants. Her request was granted, but the superior court interlineated on its order that, "Permission to amend does not mean the Court may not later dismiss some or all of these claims on the bases argued – and the Court may, in fact, even ask itself 'What Would Judge Coughenour Do?'"

O'Brien then amended her complaint to include ABM Parking and ABMI as defendants. Five days after that, and nearly a month before the upcoming hearing on the motions to dismiss, O'Brien voluntarily dismissed all claims against six of the individual defendants—Koskinen, Lawson, Purvis, Howery, Smith, and Ketza.[11] At this point, the remaining defendants in the superior court case were Carder, ABM Parking, and ABMI.

Those defendants then removed the case to federal court, again identifying Carder as a sham, not indispensable, defendant who was sued only to defeat diversity jurisdiction and seeking his dismissal as a defendant. However, United States District Court Judge Thomas S. Zilly denied the defendants' motion to dismiss the claims against Carder, determining that O'Brien "stated a theoretically plausible claim against him" and remanded the case to the King County Superior Court.

One week later, the defendants moved in superior court for sanctions based on O'Brien asserting claims against the individual defendants, averring

---

[11] Howery and Smith were dismissed from the case without ever having been personally served with a summons and complaint.

- 9 -

that the individuals "were but mere pawns in [O'Brien's] counsel's improper forum shopping scheme." This was so, the defendants argued, because the individuals were included in the 2015 superior court litigation only to enable O'Brien to litigate against ABM Parking and ABMI in the state court forum notwithstanding that the companies had, in 2013, successfully removed O'Brien's first state court action to the federal district court. O'Brien opposed the motion for sanctions. In her opposition pleadings, however, she did not proffer factual allegations implicating the four individual defendants or legal analysis to support her assertion that the claims alleged against the individual defendants were made in compliance with CR 11.

The superior court granted the defendants' motion for sanctions. The superior court found that O'Brien never submitted any factual allegations or legal analysis in support of her claims against Lawson, Koskinen, Purvis, and Ketza. The superior court also found that O'Brien dismissed these defendants several days after she was granted permission to add ABM Parking and ABMI as defendants in the second state court action. From this and the procedural history in the federal court action, the superior court concluded that the four individuals had been sued in state court for the improper purpose of forum shopping. The superior court ordered that O'Brien and her attorneys pay sanctions in the amount of legal costs incurred by the individual defendants in defending in the second state court lawsuit. The superior court indicated that it would issue a further order upon written submissions.

O'Brien requested that the superior court reconsider its sanctions ruling, and, for the first time in a legal filing to the court, made legal arguments in support of her claims against the individual defendants. Her request for reconsideration was denied.

Carder, ABM Parking, and ABMI each then filed a motion for summary judgment. O'Brien filed a brief in opposition to summary judgment, supported by a declaration from O'Brien, and moved for a continuance of the summary judgment hearing so that she could conduct additional discovery. The defendants, meanwhile, filed a motion to strike O'Brien's declaration. After oral argument, the superior court issued an order striking portions of O'Brien's declaration, denying O'Brien's motion for a continuance, and granting each defendant's summary judgment motion.

The superior court next issued a second order on the defendants' motion for sanctions. It imposed a sanction of $6,500 on O'Brien and her attorneys. The superior court re-emphasized that it was granting sanctions on the basis that, by failing to submit factual allegations and legal argument in defense of its claims against the four individual defendants, O'Brien never attempted to make a good faith argument to extend existing law.[12] Instead, the superior court noted, O'Brien's inclusion of those individual defendants in the lawsuit was "in service of a concerted effort at forum shopping and, therefore, was 'for an improper purpose.'"

---

[12] Indeed, prior to the order granting summary judgment dismissal of all claims against all remaining defendants, O'Brien had never asked the court to rule that the existing law should be modified or extended.

- 11 -

O'Brien now appeals from both the CR 11 rulings and the grants of summary judgment.

II

O'Brien asserts that the superior court erred by imposing sanctions on her and her attorneys on the basis that the claims alleged in the pleadings filed against Lawson, Koskinen, Purvis, and Ketza were filed for an improper purpose. O'Brien is wrong.

We review a superior court's sanction decision for abuse of discretion. Engstrom v. Goodman, 166 Wn. App. 905, 917, 271 P.3d 959 (2012) (citing Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 338, 858 P.2d 1054 (1993)). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." Fisons, 122 Wn.2d at 339. "The purpose of [CR 11] is to deter baseless filings and curb abuses of the judicial system."[13] Skimming v. Boxer, 119 Wn. App. 748, 754, 82 P.3d 707 (2004) (citing Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994)). "A filing is 'baseless' when it is '(a) not well grounded in fact, or (b) not warranted by (i) existing law or (ii) a good faith argument for the alteration of existing law.'" MacDonald v. Korum Ford, 80 Wn. App. 877, 883-84, 912 P.2d 1052 (1996) (quoting Hicks v. Edwards, 75 Wn. App. 156, 163, 876 P.2d 953 (1994)).

---

[13] This rule establishes that the signature of a party or attorney on a pleading constitutes a certificate by that party or attorney that the pleading is well grounded in fact, warranted by existing law, or by a good faith argument for a change to existing law, is not interposed for an improper purpose, and contains only factual contentions or denials warranted by the evidence. CR 11(a). When a pleading is signed in violation of the rule, "the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction," which may include reasonable attorney fees and expenses. CR 11(a).

Here, the superior court's first order granting the request for sanctions read, in pertinent part:

> A review of the history of this litigation in both state and federal court, leaves it readily apparent that there was no defensible reason for treating these individuals in the manner they were. It is particularly noteworthy that no facts or legal theory have even been put forth in response to this motion. . . .
>
> . . . [A] just resolution of the dispute between plaintiff and the employer should have been reached by now in federal court. Any such resolution was prevented by the procedural machinations in which these four individuals were ill-used as unwilling and unfortunate pawns. Once leave was granted in May to add plaintiff's former employer to this lawsuit (accomplishing the desired – but previously thwarted – result of a transfer of the primary case against the corporate defendants from federal to state court), these four individuals (as well as Howrey [sic] and Smith who were never served) were promptly dropped from the suit. That their involvement was so quickly proclaimed to be unnecessary is a compelling demonstration that it had *always* been unnecessary.
>
> This Court concludes that the bringing of claims against these four individual defendants (Koskinen, Lawson, Purvis and Ketza and their marital communities) was in clear violation of CR 11.

In its second order, the court re-emphasized:

> a. Many of the claims against these individuals were not well-grounded in fact or warranted by existing law and a reasonable inquiry would have made this clear; there has not been offered any way in which these individuals could have been found liable under the plaintiff's contract with her employer nor has there been any explanation of why the statute of limitations would not bar a 2015 lawsuit based upon actions taken no later than 2010.
> b. By its previous reference to the "procedural machinations in which these four individuals were ill-used as unwilling and unfortunate pawns," the Court meant to indicate that their inclusion in the lawsuit was in service of a concerted effort at forum shopping and, therefore, was "for an improper purpose."

The superior court's sanctions decision was tenable. Because O'Brien had never submitted factual allegations or legal argument in support of her

claims against Lawson, Koskinen, Purvis, and Ketza, the superior court could reasonably infer that the claims against those individual defendants were not made in a good faith effort to extend the law but, rather, for some other purpose. In addition, because of O'Brien's voluntary dismissal of the four individual defendants after she had added ABM Parking and ABMI to her second state court action, the superior court could reasonably infer that O'Brien's actual purpose for initially suing the individual defendants was forum shopping and was thus improper.[14]

Nonetheless, in her appellate briefing, O'Brien contends that her claims against the four dismissed individual defendants were made for a proper purpose and in a good faith attempt to extend the law because, although no case authority exists in support of her claims, existing case law could be modified so as to justify the claims. But O'Brien misses the point. As discussed, the superior court's imposition of sanctions was premised on its finding that, *by the time that it issued its sanctions order*, O'Brien had failed to provide factual allegations and legal argument in support of her claims against the four dismissed individual defendants. That O'Brien has on appeal brought forth allegations and argument

---

[14] O'Brien asserts that the presence of Carder, a Washington resident, in the second state court action demonstrates that she had included the four individual defendants for a proper purpose, rather than for forum shopping. This is so, O'Brien contends, because Carder's inclusion in the action, by itself, defeated federal diversity jurisdiction. This argument is unconvincing. Carder's inclusion as a defendant had not prevented the federal court from maintaining jurisdiction over the first lawsuit. Thus, the superior court judge could reasonably conclude that O'Brien had included the four individual defendants in a further attempt to anchor her claim in the state forum. There was no error.

is of no moment. The superior court did not abuse its discretion.[15] There was no error.

O'Brien also contends that the superior court erred by denying her motion for reconsideration of its sanction order. We disagree. As discussed, the premise for the superior court's sanction order was that—*prior to the court's sanction order*—O'Brien had never actually requested a ruling that would have extended the law. Instead, she dismissed the claims. From this, the court concluded that she had named these defendants for the improper purpose of forum shopping. The logic is inescapable: to litigate in a good faith attempt to modify the law, a party must actually ask the court to modify the law. This never happened. There was no abuse of discretion. Kleyer v. Harborview Med. Ctr. of Univ. of Wash., 76 Wn. App. 542, 545, 887 P.2d 468 (1995) (citing Meridian Minerals Co. v. King County, 61 Wn. App. 195, 203-04, 810 P.2d 31 (1991)).

---

[15] O'Brien contends that the superior court erred by failing to consider the least severe alternative in imposing its sanction against her and her attorneys, by failing to specify how it calculated the sanction award, and by failing to explain the relationship between the sanction and the conduct being sanctioned. O'Brien is wrong. The superior court determined that, in light of O'Brien's improper allegations against the four individuals, sanctions tied to the cost of defending those individuals against O'Brien's claims were appropriate. In addition, the superior court, citing Biggs, 124 Wn.2d at 197, recognized that CR 11 is not "meant to act as a fee shifting mechanism" and explicitly reduced the sanction award from the actual costs of defending these four individuals, $38,237.50, to a lesser amount that the superior court deemed was more appropriate, $6,500.00, nearly one-sixth of the estimated costs. This was well within the superior court's discretion. Thus, the superior court did not err.

O'Brien also asserts that the superior court did not have the authority to impose CR 11 sanctions on the basis of "improper purpose" alone. Again, she is wrong. Indeed, the authority on which she relies for this proposition plainly supports just the opposite—that improper purpose is one of several grounds that can, standing alone, justify the imposition of sanctions. Biggs, 124 Wn.2d at 201.

III

O'Brien next contends that the superior court erred by denying her motion for a continuance of the summary judgment hearing in order to conduct additional discovery. A review of the record reveals no such error.

"Whether a motion for continuance should be granted or denied is a matter of discretion with the trial court, reviewable on appeal for manifest abuse of discretion." Trummel v. Mitchell, 156 Wn.2d 653, 670, 131 P.3d 305 (2006) (citing Balandzich v. Demeroto, 10 Wn. App. 718, 720, 519 P.2d 994 (1974)). A court abuses its discretion when its decision is based on clearly untenable or manifestly unreasonable grounds. Trummel, 156 Wn.2d at 671 (quoting Balandzich, 10 Wn. App. at 721). In exercising its discretion, a trial court may consider several factors, including the prior history of the litigation and any prior continuances granted to the moving party. Trummel, 156 Wn.2d 670-71 (citing Balanzdich, 10 Wn. App. at 720).

Here, the superior court denied O'Brien's motion for continuance, stating:

> [T]he case has been pending for over two years, there has been active discovery and motions practice with certain things left undone seemingly by choice (such as a deposition of Leonard Carder). In those matters not diligently pursued, there is no indication of specific evidence that is likely to be found and likely to create material issues of fact.

The superior court's decision was tenable. Given that O'Brien's 2013 action and the present action involved predominantly the same actors and allegations, the superior court's determination was reasonable. Moreover, in light of the two continuances granted to O'Brien during the federal action, which

- 16 -

allowed her to pursue additional discovery, the superior court clearly acted within its discretion. There was no error.[16]

## IV

O'Brien next asserts that the superior court erred by granting summary judgment on behalf of ABMI, ABM Parking, and Carder as to her employment discrimination, retaliation, and breach of contract claims. We disagree.

"When reviewing an order of summary judgment, we engage in the same inquiry as the trial court." Clarke v. Office of the Attorney General, 133 Wn. App. 767, 784, 138 P.3d 144 (2006) (citing Grundy v. Thurston County, 155 Wn.2d 1, 6, 117 P.3d 1089 (2005)). "All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party." Washington v. Boeing Co., 105 Wn. App. 1, 7, 19 P.3d 1041 (2000) (citing Mountain Park Homeowners Ass'n, Inc. v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994)). "Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Clarke, 133 Wn. App. at 784-85 (citing CR 56(c)).

## A

As a preliminary matter, O'Brien contends that the superior court erred by striking her declaration in support of her opposition to the motions for summary

---

[16] O'Brien asserts that the superior court erred by denying her request for a continuance because she was not permitted to amend her complaint to include a wrongful termination in violation of public policy claim. O'Brien offers no elaboration or legal argument in her briefing to support this assignment of error. Thus, we decline to consider it. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

judgment. The court determined that the declaration was, in part, conclusory, unsubstantiated, and lacking in foundation.

This issue was raised for the first time on appeal in O'Brien's reply brief. Carder, ABM Parking, and ABMI were thus not afforded a fair opportunity to respond. Accordingly, we do not consider O'Brien's claim. RAP 10.3(c); <u>Kirby v. Emp't Sec. Dep't</u>, 185 Wn. App. 706, 727, 342 P.3d 1151 (2014), <u>review denied</u>, 183 Wn.2d 1010 (2015); <u>accord Cowiche Canyon Conservancy v. Bosley</u>, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

### B

O'Brien asserts that the superior court erred by granting summary judgment on behalf of ABMI because, as evidenced by Smith's review of ABM Parking's termination decision, ABMI was also her employer, thereby allowing her to bring her employment discrimination claims against ABMI.

An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6); <u>Cowiche Canyon Conservancy</u>, 118 Wn.2d at 809. O'Brien fails to provide citation to legal authority establishing an employment relationship between her and ABMI. Accordingly, we decline to further consider this claim.

### C

O'Brien next contends that the superior court erred by dismissing her claims against ABM Parking as to her hostile work environment, retaliation, age

discrimination, failure to accommodate, and breach of contract claims. Each is addressed in turn.

1

O'Brien contends that the superior court erred by dismissing her claim that ABM Parking subjected her to a hostile work environment. This is so, she asserts, because she was unnecessarily disciplined, required to report to work while on vacation, assigned to inspect parking locations, and assigned to work without reasonable accommodation at the Spokane Fair.

In order to withstand summary judgment on a hostile work environment claim, a plaintiff must make a prima facie showing that "(1) the harassment was unwelcome, (2) the harassment was because of [a protected classification], (3) the harassment affected the terms or conditions of employment, and (4) the harassment is imputed to the employer." Boeing Co., 105 Wn. App. at 12-13 (citing Fisher v. Tacoma Sch. Dist. No. 10, 53 Wn. App. 591, 595-96, 769 P.2d 318 (1989)). Whether allegedly discriminatory conduct is sufficiently severe and pervasive so as to affect the terms and conditions of employment is a question of fact. Adams v. Able Bldg. Supply, Inc., 114 Wn. App. 291, 296, 57 P.3d 280 (2002) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). However, a grant of summary judgment dismissing a hostile work environment claim is appropriate when the plaintiff's submissions demonstrate nothing more than "[c]asual, isolated or trivial manifestations of a discriminatory environment" because such manifestations do not affect the conditions of employment "to a sufficiently significant degree to violate the law."

Boeing Co., 105 Wn. App. at 10 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998); Glasgow v. Ga.-Pac. Corp., 103 Wn.2d 401, 406, 693 P.2d 708 (1985); Korum Ford, 80 Wn. App. at 886).

O'Brien fails to establish that the allegedly harassing conduct was sufficiently severe and pervasive so as to alter the terms of her employment. As the superior court observed, her assignments to inspect ABM Parking's client locations and assist with parking at the Spokane Fair were reasonably within the scope of her duties as operations manager. Moreover, the grounds on which O'Brien was disciplined were reasonable and her other allegations constitute isolated incidents that do not rise to the requisite level of severity and pervasiveness to support a claim.[17] There was no error.

## 2

O'Brien next asserts that the superior court erred by granting ABM Parking's motion for summary judgment as to her retaliation claim. This is so, she asserts, because she engaged in opposition activity by assisting with Dillon's sexually inappropriate conduct complaint and with Koskinen's termination decision regarding Jason Reidt, another ABM employee.

---

[17] O'Brien asserts that she was subjected to a hostile work environment when a manager recorded a private telephone conversation and played the conversation to her coworkers. O'Brien's citation to the record in her briefing does not, in actuality, reference this conduct. Thus, we do not further consider this assertion.

O'Brien next relies on her allegation that she was granted vacation time over a weekend and subsequently asked to work a shift during that time. However, without more, this allegation is clearly insufficient to establish severe and pervasive harassment that altered the terms of her employment. O'Brien also contends that the superior court usurped the role of the jury by concluding that "the parking lot inspections do not seem to be outside the scope of anticipatable duties." She fails to submit legal argument in support of this claim and thus we do not further consider it.

"To show retaliation based on protected activity, a plaintiff must provide evidence that the individuals [s]he alleges retaliated against [her] knew of [her] protected activity." Marin v. King County, 194 Wn. App. 795, 818, 378 P.3d 203 (citing Currier v. Northland Servs., Inc., 182 Wn. App. 733, 746-47, 332 P.3d 1006 (2014), review denied, 182 Wn.2d 1006 (2015)), review denied, 186 Wn.2d 1028 (2016).

There is an absence of evidence that the individuals who terminated O'Brien's employment were aware that she had engaged in the alleged protected activity. O'Brien established that Koskinen was aware that she had engaged in the alleged protected activity. But Koskinen left his employment with ABM Parking in 2010 and Howery and Kwan made the decision to terminate O'Brien's employment in 2012. Moreover, Howery and Kwan denied knowing that O'Brien engaged in the activities that she described. O'Brien failed to provide evidence rebutting their denials. Thus, O'Brien's retaliation claim fails.[18]

3

O'Brien alleges that the superior court erred by granting summary judgment on her age discrimination claim because she and Eichner, the individuals whose positions were terminated, were both over 40 years old and, therefore, ABM Parking's reason for terminating her employment was pretextual.

---

[18] O'Brien argues that she engaged in protected opposition activity in 2010 when she forwarded an e-mail by Koskinen advising an employee not to ask another employee about confidential and personal medical issues. However, O'Brien again fails to establish that Howery and Kwan were aware that she had engaged in this allegedly protected conduct. Marin, 194 Wn. App. at 818.

To survive summary judgment on an age discrimination claim when an employer presents "'admissible evidence of a legitimate, nondiscriminatory explanation for the adverse employment action sufficient to raise[ ] a genuine issue of fact as to whether [the defendant] discriminated against the plaintiff,'" the employee must "'show that [defendant's] stated reason for [the adverse action] was in fact pretext.'" Dumont v. City of Seattle, 148 Wn. App. 850, 862, 200 P.3d 764 (2009) (internal quotation marks omitted) (alterations in original) (quoting Hill v. BCTI Income Fund-I, 144 Wn.2d 172, 181-82, 23 P.3d 440 (2001), overruled on other grounds by McClarty v. Totem Elec., 157 Wn.2d 214, 137 P.3d 844 (2006)). However, an employee cannot create a question of fact on the pretext issue in the absence of some evidence that the employer's reasons for termination are unworthy of belief. Kuyper v. Dep't of Wildlife, 79 Wn. App. 732, 738, 904 P.2d 793 (1995) (citing Sellsted v. Wash. Mut. Sav. Bank, 69 Wn. App. 852, 859, 851 P.2d 716 (1993)).

O'Brien fails to show that ABM Parking's stated reason for the adverse action—that O'Brien's position was terminated as part of a workforce reduction in response to losses in revenue and automation at their parking locations—was, in fact, pretext. O'Brien presents no evidence to rebut ABM Parking's stated reasons for terminating the positions she and Eichner held in the Seattle/Bellevue branch. She offers no evidence rebutting the evidence presented by ABM Parking regarding the timing of its decision. Indeed, O'Brien offers no evidence to support her claim other than her own speculation that age was the reason for her termination. Such statements are "not enough to survive

summary judgment." <u>Domingo v. Boeing Employees' Credit Union</u>, 124 Wn. App. 71, 85, 98 P.3d 1222 (2004). Thus, O'Brien's claim was properly dismissed.

4

O'Brien contends that she was discriminated against by ABM Parking because it failed to reasonably accommodate her claimed medical condition when she was assigned to work three days at the Spokane Fair in 2012.

To establish a prima facie case for failure to accommodate a disability, the employee must show:

> "(1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality."

<u>Riehl v. Foodmaker, Inc.</u>, 152 Wn.2d 138, 145-46, 94 P.3d 930 (2004) (quoting <u>Hill</u>, 144 Wn.2d at 192-93; citing <u>Davis v. Microsoft Corp.</u>, 149 Wn.2d 521, 532, 70 P.3d 126 (2003)). "A reasonable accommodation envisions an exchange between employer and employee, where each party seeks and shares information to achieve the best match between the employee's capabilities and available positions." <u>Frisino v. Seattle Sch. Dist. No. 1</u>, 160 Wn. App. 765, 779, 249 P.3d 1044 (2011).

O'Brien fails to show that ABM Parking failed to reasonably accommodate her alleged medical condition. As discussed, in prior years, ABM Parking employees had worked shifts at the Spokane Fair lasting from 8:00 a.m. to 11:00

p.m., a total of 15 hours. In response to O'Brien's e-mail that she was concerned about working such long hours, Ketza responded that the plan was to increase staffing at the Spokane Fair in order to reduce shift lengths. O'Brien replied, "all of my needs have been met!" At the fair, O'Brien worked for 8 and 12 hour shifts. She did not request to stop working the shifts nor did she request further accommodation while at the fair.

Thus, to the extent that O'Brien articulated her concern about her medical condition, ABM Parking reasonably accommodated her. The shifts assigned at the fair were shorter than they had been in the past and O'Brien affirmatively communicated that her needs had been met. She conveyed no other message to her supervisors. Accordingly, O'Brien has failed to show that ABM Parking failed to meet a reasonable accommodation duty.

5

O'Brien next contends that the superior court erred by dismissing her breach of contract claim against ABM Parking based on the provisions of the ABM Code of Business Conduct (Code). O'Brien's claim fails.

When an employer's handbook states "in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship," an employee cannot establish that the employer made an enforceable promise through statements in the handbook. Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 230, 685 P.2d 1081 (1984).

Here, the Code did not create an employment contract between O'Brien and ABM Parking. In fact, the Code contains a conspicuous certification

provision whereby employees "agree that neither this Code nor any part thereof shall constitute a contract for employment between me and the Company." Furthermore, in her briefing, O'Brien conceded that, every year, she received and reviewed a copy of the Code and acknowledged that she had received it. There was no error.[19]

Accordingly, the superior court did not err by dismissing O'Brien's breach of contract claim against ABM Parking.

D

O'Brien further asserts that the superior court erred by granting summary judgment on behalf of Carder. This is so, she asserts, because genuine issues of material fact remain regarding her hostile work environment and retaliation claims against him. We disagree.

To hold a manager or supervisor individually liable under the WLAD, the plaintiff must show that the manager or supervisor "*affirmatively* engage[d] in discriminatory conduct." Brown v. Scott Paper Worldwide Co., 143 Wn.2d 349, 360 n.3, 20 P.3d 921 (2001) (citing Tyson v. CIGNA Corp., 918 F. Supp. 836, 841-42 (D.N.J. 1996), aff'd, 149 F.3d 1165 (3d Cir. 1998)).

O'Brien avers that Carder retaliated against her after she assisted with Dillon's sexually inappropriate conduct complaint. However, O'Brien fails to rebut, without resorting to unsubstantiated and speculative allegations, Carder's declaration establishing that he was not personally aware of any complaint by

---

[19] O'Brien references in her briefing to the ABM Employee Handbook, but she provides no citation to the record for this handbook.

Melody Dillon of sexually inappropriate conduct during her employment with ABM Parking.[20] Thus, O'Brien's claim fails.

O'Brien next suggests that Carder retaliated against her because, on the day that she was fired, she had notified her supervisor that she had received a telephone call from a newspaper reporter inquiring into fraud at an ABM Parking location, and that her supervisor had then forwarded her notification to Carder. Thus, O'Brien contends, she was terminated because she had spoken with a media member about accounting irregularities. But, as discussed herein, the decision to terminate O'Brien's position was made by Howery and Kwan several months earlier and, significantly, O'Brien presents no evidence that Carder was involved in that decision.[21] Again, O'Brien's claim fails.

O'Brien also contends that Carder had subjected to her a hostile work environment by assigning her to inspect ABM Parking's client locations and investigate the accounts receivable at Pacific Place Garage. As discussed herein, these tasks were within the scope of her employment as operations manager at ABM Parking and cannot be said to have altered the terms and

---

[20] The evidence presented by O'Brien in support of her allegation that Carder was affirmatively engaged in conduct in violation of the WLAD is based primarily on portions of her declaration and deposition testimony that are unsubstantiated, conclusory, and lacking in foundation. Specifically, O'Brien alleged that Carder retaliated against her because of her involvement in Dillon's complaint. As circumstantial evidence to support her allegation, O'Brien points out that Dillon testified in her deposition that she went to a "fancy guy's office" for a meeting and felt intimidated there. Significantly, however, Dillon further testified that she did not know whether Carder was the individual whose office she visited, did not "remember who the guy was," or even what the meeting was about. Thus, O'Brien's claim that Carder was involved in Dillon's complaint is unsubstantiated.

[21] O'Brien speculates that Carder was the "true decision-maker," that her position was terminated to keep her "from disclosing what she knew about the fraud or mismanagement" at the ABM Parking location, and that the decision to eliminate O'Brien's position "had to be approved by Carder" because he had allegedly created her position in 2007 and retained control over the operating budget for ABM Parking. The superior court properly gave these speculative contentions no evidentiary significance.

conditions of her employment. Her claim fails.[22] Thus, the superior court did not err by dismissing O'Brien's claims against Carder.[23]

Affirmed.

We concur:

_____
Cox, J.

_____
Becker, J.

_____
Dwyer, J.

---

[22] O'Brien fails to present facts or legal analysis connecting Carder to her age and disability discrimination claims as well as her breach of contract claim. Accordingly, we decline to further consider these claims as they pertain to Carder.

[23] O'Brien also contends that the trial court erred by granting summary judgment as to her negligent infliction of emotional distress and intentional infliction of emotional distress claims against Carder, ABM Parking, and ABMI. However, she fails to present any factual allegations or legal argument. Accordingly, we decline to further consider these claims. Cowiche Canyon Conservancy, 118 Wn.2d at 809.